# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MAHIR GHANIN DAOUD,

                Petitioner,                Case Number: 2:06-CV-13310

v.                                      HONORABLE GERALD E. ROSEN

SUE DAVIS,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Mahir Ghanin Daoud, through counsel, has filed a petition for a writ of habeas

corpus, pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the Richard A. Handlon

Correctional Facility in Ionia, Michigan, pursuant to a conviction for first-degree murder. For

the reasons set forth below, the Court denies the petition.

## I.  Facts

Petitioner's conviction arises from the beating death of his mother, Teriza Daoud. The

Michigan Court of Appeals set forth the relevant facts adduced at trial as follows:

> The victim was reported missing from her Troy home early on February 5, 1985.
> During the evening hours of February 4, 1985, the Toledo Police Department
> discovered a body inside a dumpster that someone had set on fire. After the
> Toledo police discovered the missing person report concerning the victim that the
> Troy police had filed, the two departments cooperated to identify the unidentified
> body found in Toledo. Dental records, x-ray films, and fingerprint comparisons
> positively identified the body as Teriza Daoud, defendant's mother.
>
> In February 1985, the Troy police twice interviewed defendant concerning his
> whereabouts the day his mother disappeared. The police identified defendant as a
> suspect at the time of the second interview, during which defendant permitted the
> police to search the vehicle he had been driving on February 4, 1985, and the
> police discovered that he had washed out the vehicle's back seat and trunk. But

no arrest of defendant ensued because, according to the Troy police investigating the crime, defendant and the rest of the victim's family ceased cooperating with the police.

Defendant was not arrested for the victim's murder until May 21, 1994, when he jumped into front of a marked Detroit police vehicle and proclaimed that he had killed his mother ten years earlier. The Troy police then interviewed defendant, who waived his Miranda rights and gave a detailed, tape-recorded account of his commission of the killing, disposal of the victim's body, and efforts to clean up evidence of the crime.

People v. Daoud, No. 250166, slip op. at 1-3 (Mich. Ct. App. Nov. 18, 2004).

## II. Procedural History

Petitioner was charged with first-degree premeditated murder and bound over to the Oakland County Circuit Court for trial on that charge. On October 22, 1998, the trial court issued an order suppressing Petitioner's confessions on the ground that Petitioner did not knowingly and voluntarily waive his Miranda rights. The Oakland County Prosecutor filed an interlocutory application for leave to appeal this decision in the Michigan Court of Appeals, raising the following claim:

Whether the trial court clearly erred when it suppressed defendant's confessions, including a confession made before defendant was even in custody?

The Michigan Court of Appeals reversed the trial court's decision to the extent that it suppressed all of Petitioner's statements because, the court of appeals held, Petitioner's statements to police prior to the time he was transported to the police station did not require the protection of Miranda because they were not the result of a custodial interrogation. The court of appeals affirmed the trial court's suppression of Petitioner's statement to police given after he was transported to the police station. People v. Daoud, No. 215615 (Mich. Ct. App. Jan. 11, 1999).

2

The prosecutor filed an application for leave to appeal the court of appeals decision to the Michigan Supreme Court, arguing that the trial court clearly erred in suppressing Petitioner's custodial interrogation. The Michigan Supreme Court granted leave to appeal. People v. Daoud, 461 Mich. 873 (Mich. 1999). After full briefing and oral arguments, the Michigan Supreme Court reversed the trial court's decisions suppressing Petitioner's statements, finding Petitioner's statements voluntary and knowingly and intelligently given. People v. Daoud, 462 Mich. 621 (Mich. July 20, 2000).

The matter then proceeded to a bench trial. Petitioner was convicted of first-degree murder. On July 21, 2003, he was sentenced to life imprisonment without the possibility of parole.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.    The trial court reversibly erred in admitting into evidence the defendant's alleged statement(s) to the police.

II.   The defendant was unlawfully deprived of the effective assistance of trial counsel when trial counsel failed and/or refused to present insanity defense(s) or a defense that the defendant was guilty or mentally ill.

III.  The trial court reversibly erred in finding that the defendant's mental state did not rise to the level of an insanity defense.

Appellate counsel also filed a motion to remand to the trial court for an evidentiary hearing on Petitioner's ineffective assistance of trial counsel claim. The Michigan Court of Appeals remanded the matter for an evidentiary hearing pursuant to People v. Ginther, 390 Mich. 436 (1973). People v. Daoud, No. 250166 (Mich. Ct. App. March 9, 2004).

On remand, the trial court allowed trial counsel to testify regarding his decision not to

assert an insanity defense. Following trial counsel's testimony, the trial court denied Petitioner's

motion for evidentiary hearing and his motion to appoint another independent examiner.

Petitioner then filed a supplemental brief in the Michigan Court of Appeals, raising the

following additional claim:

> The trial court denied the defendant his federal and state constitutional rights to
> due process of law and equal protection of the law when it denied the defense
> motion(s) for a full <u>Ginther</u> hearing and denied the defense motion for an
> independent evaluation of the insanity defense.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. <u>People v.</u>

<u>Daoud</u>, No. 250166, 2004 WL 2624877 (Mich. Ct. App. 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising

the following claims:

> I.    The court of appeals decision affirming the trial court is clearly erroneous and
>       will cause the defendant material injustice because the trial court denied the
>       defendant his federal and state constitutional rights to due process of law and
>       equal protection of the law when it denied the defense motion for an evidentiary
>       hearing and denied the defense motion for an independent examination of the
>       insanity defense.
>
> II.   The defendant's fundamental legal rights of access to the judicial process
>       guaranteed under federal constitutional and state law principles were violated by
>       the court of appeals decision affirming the trial court's denial of the defense
>       motion for an evidentiary hearing and the motion to have the defendant
>       independently evaluated.
>
> III.  The court of appeals reversibly erred in affirming the trial court's decision
>       admitting into evidence the defendant's alleged statement(s) to the police.

The Michigan Supreme Court denied leave to appeal. <u>People v. Daoud</u>, 473 Mich. 882

(Mich. 2005).

Petitioner then filed the pending petition, through counsel, raising the following claims:

> I.    Whether the trial court did not err in suppressing the petitioner's confession when

it found that the petitioner did not knowingly and intelligently waive his Miranda rights?

II.     Whether the state courts['] decision affirming the trial court decision denying the petitioner's request for an evidentiary hearing and for an independent psychological evaluation denied the petitioner his federal and state constitutional rights to due process of law and equal protection of the law?

        a.     Whether the petitioner was denied effective assistance of counsel as guaranteed under the state and federal constitutions where trial counsel failed to raise an insanity defense where there was ample evidence and opportunity to do so?

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[1]; *see also* <u>Cremeans v. Chapleau</u>, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." <u>Id.</u> at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

## IV. Analysis

## A. Admissibility of Petitioner's Confession

Petitioner argues that the state court erred in finding that Petitioner knowingly and voluntarily waived his Miranda rights prior to giving his taped custodial statement to police. Petitioner argues that his mental illness so greatly impaired his cognitive abilities it rendered him incapable of processing the Miranda warnings and, therefore, any waiver of his Miranda rights was unknowing and involuntary.

The Fifth Amendment provides that "[n]o person shall be . . . .compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that, to protect a suspect's Fifth Amendment rights, an individual who has been taken into custody or otherwise deprived of his freedom and is questioned must be advised, prior to any questioning, "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him." Id. at 478-79. A defendant may waive the rights conveyed by the Miranda warnings, provided that the waiver is made voluntarily, knowingly and intelligently. Id. at 475.

The inquiry whether a waiver is coerced "has two distinct dimensions." Moran v. Burbine, 475 U.S. 412, 421 (1986).

First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion,

or deception.  Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. (internal quotation omitted).

The Michigan Supreme Court held that Petitioner's confession was voluntarily, knowingly and intelligently given.  The state court employed the two-part analysis articulated in Moran.  First, the state court held that the waiver was voluntary because there was no claim of police coercion.  Daoud, 462 Mich. at 635.  Petitioner does not argue with the Michigan Supreme Court's conclusion in this regard.  Rather, Petitioner claims that the Michigan Supreme Court's conclusion that the waiver was knowing and intelligent was in error.

The Michigan Supreme Court correctly stated that, "determining whether a suspect's waiver was knowing and intelligent requires an inquiry into the suspect's level of understanding, irrespective of police behavior."  Id. at 636.  Further, the state court observed that a suspect need not understand all of the ramifications and consequences of choosing to waive or exercise his Miranda rights for the waiver to be considered knowing and intelligent.  Id., citing Colorado v. Spring, 479 U.S. 564, 574 ("The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege.").

The Michigan Supreme Court held that the trial court erred in finding that Petitioner did not knowingly and intelligently waive his rights.  The Michigan Supreme Court considered the testimony of several expert witnesses in reaching this conclusion, Dr. Robert Charles Clark, Robert Mogy , and Thomas Grisso.  Daoud, 462 Mich. at 627-28.  First, Dr. Robert Charles Clark testified that, "there were no clear indications that defendant's confession was the product

of any delusion or that defendant did not understand that the police would use his statement against him." Id. at 628. Dr. Mogy testified that Petitioner believed that God was going to free him, however, he also acknowledged that Petitioner also seemed to be aware that his statements to police made it possible he would be jailed. The Michigan Supreme Court interpreted Dr. Mogy's basic position as being that Petitioner "simply ignored the consequences of his confessing because of his delusions, not that [Petitioner] could not understand those consequences." Id. at 644.

Because Drs. Mogy and Clark left some question in the trial court's view as to Petitioner's understanding of the Miranda warnings, the trial court arranged for a third exert witness to examine Petitioner, Dr. Thomas Grisso. Dr. Grisso testified that Petitioner had a "straight forward understanding . . . of what the Miranda warnings are saying." Id. at 642. Dr. Grisso further testified that Petitioner would have understood that the police intended to jail him. Id.

Considering the testimony of these three expert witnesses, the Michigan Supreme Court concluded that the trial court was incorrect in holding that Petitioner's Miranda waiver was unknowing and involuntary. The Michigan Supreme Court noted that "a defendant need not have a wise or shrewd basis for waiving Miranda rights for the waiver to be valid." Id. at 642, citing Connecticut v. Barrett, 479 U.S. 523, 525-26 (1987). The Michigan Supreme Court held that none of the expert witnesses testified that defendant lacked comprehension of what was said to him or what was occurring. Id. at 645. The state court further concluded that Petitioner understood he did not have to speak to police and that police had the power and authority to jail him, his Miranda waiver was knowing and voluntary.

This Court must decide whether the state court's decision in this regard was contrary to or an unreasonable application of <u>Miranda</u> and its progeny. The record presents expert testimony which supports the Michigan Supreme Court's finding that Petitioner possessed the "requisite level of comprehension" when he waived his <u>Miranda</u> rights. <u>Moran</u>, 475 U.S. at 421. The expert testimony presented also could have supported a contrary conclusion. While this Court may have been inclined to suppress Petitioner's custodial statement, such is not the standard under which the Court reviews a state court judgment. Because the expert opinions support the state court's finding that Petitioner's waiver was knowingly made, the Court finds that the state court's conclusion was not an unreasonable application of <u>Miranda</u>.

Petitioner's submission of a psychiatric evaluation authored by Dr. Gerald A. Shiener does not alter the Court's conclusion. Dr. Shiener's report is based upon a psychiatric examination of Petitioner conducted on January 26, 2007, and additional materials related to Petitioner's crime, including the petition for a writ of habeas corpus, state court decisions related to Petitioner's conviction, Petitioner's taped custodial interview, psychiatric evaluations performed by Drs. Balay, Mogy, Clark and Grisso.

Dr. Shiener concluded that, at the time of his custodial statement, Petitioner's "conduct, demeanor, and behavior are more consistent with an inability to offer a confession in an intelligent and knowing manner." Dr. Shiener's Report at p. 12. He concluded that Petitioner's "delusional disorganized thinking prevented him from experiencing any understanding of the issues involved in the Miranda warning." <u>Id.</u> at 13. While Dr. Shiener's evaluation clearly contradicts the conclusion that Petitioner's waiver was knowingly made, it does not negate the other experts' findings (reached following interviews conducted much closer in time to the date

of interrogation).  Dr. Shiener's evaluation does not render the Michigan Supreme Court's decision an unreasonable application of federal law.

Moreover, even if the custodial statement was improperly admitted, its admission was harmless.  Admission of an involuntary confession is subject to harmless-error analysis.  Arizona v. Fulminante, 499 U.S. 279, 308 (1991).  *See also* Atkins v. Booker, 2006 WL 3086926, * 3 (E.D. Mich. Oct. 30, 2006) (applying harmless-error analysis to habeas petitioner's claim that he did not voluntarily waive his Miranda rights).  In a habeas corpus proceeding, to determine whether a constitutional trial error is harmless, a federal court must decide whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), *quoting* Kotteakos v. U.S., 328 U.S. 750, 776 (1946). "This standard reflects the 'presumption of finality and legality' that attaches to a conviction at the conclusion of direct review."  Calderon v. Coleman, 525 U.S. 141, 145 (1998), *quoting* Brecht, 507 U.S. at 633.  "It protects the State's sovereign interest in punishing offenders and its good-faith attempts to honor constitutional rights, . . . while ensuring that the extraordinary remedy of habeas corpus is available to those whom society has grievously wronged."  Id. (internal quotations omitted).  A federal court on habeas review must apply the Brecht harmless-error standard, rather than the "harmless beyond a reasonable doubt" standard set forth in Chapman v. California, 386 U.S. 18 (1967), even where the state court did not recognize the error and review for harmless beyond reasonable doubt under Chapman.  Fry v. Plier, __ U.S. __, 127 S.Ct. 2321, 2326-27 (2007).

In considering whether the improper admission of a confession was harmless, "the risk that the confession is unreliable, coupled with the profound impact that the confession has upon

the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless." Fulminante, 499 U.S. at 296.

> A confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." Bruton v. United States, 391 U.S. at 139-140, 88 S. Ct. at 1630 (White, J., dissenting). . . . While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of a crime may tempt the jury to rely upon that evidence alone in reaching its decision.

Id.

In this case, Petitioner's custodial confession was not the only confession admitted at trial. Before being taken into custody, Petitioner called a 911 operator and confessed to killing his mother, he then confessed to two police officers after flagging down their patrol car.

Linda Dickinson Jack-Bey testified that in 1994 she worked as a police officer for the Detroit Police Department. On May 21, 1994, she and her partner Officer Nevan Hughes were on routine patrol in a fully marked police car when a man she identified as Petitioner ran out in front of the car. Petitioner began shouting he had just confessed to murder to a 911 operator. Officer Hughes pulled the patrol car over to the side of the road and they exited the vehicle. They frisked Petitioner for weapons and tried to obtain general information from him, such as his name and why he was in the area. Petitioner provided his name and then proceeded to discuss the murder. Officer Hughes advised Petitioner of his Miranda rights, which, according to Officer Dickinson Jack-Bey's testimony, Petitioner waived. Petitioner proceeded to tell the officers the circumstances of the murder including: the name of the victim, the location of the murder, that

he had choked his mother and struck her in the head with a sawed-off lug wrench, wrapped her in a blanket, tied her up and hid her body near a school in Troy, Michigan. Petitioner stated that he had prepared the lug wrench by sawing it off. Petitioner told Officer Dickinson Jack-Bey that he eventually moved his mother's body to Ohio. Officer Dickinson Jack-Bey testified that Petitioner's narrative regarding the murder was largely unprompted by questions from either officer. The narrative was, instead, spontaneous.[2]

Under Michigan law, the elements of first-degree murder are: (1) the defendant intentionally killed the victim, and (2) the act of killing was premeditated and deliberate. *See* People v. Schollaert, 194 Mich.App. 158, 486 N.W.2d 312, 318 (Mich. Ct. App.1992). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. Id. "[F]actors that may be considered to establish premeditation include the following: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." People v. Plummer, 229 Mich. App 293, 300 (1998). A defendant's conduct after the killing, including a lack of remorse and attempt to hide his involvement, is also relevant to the determination that the killing was premeditated. People v. Paquette, 214 Mich. App 336, 342-343; 543 NW2d 342 (1995). "[D]efensive wounds suffered by a victim can be evidence of premeditation." People v. Johnson, 460 Mich. 720, 733; 597

_____

[2] While Petitioner's statement to Officer Dickinson Jack-Bey and her partner was originally ruled inadmissible by the trial court, the Michigan Court of Appeals held that it was admissible because it was not the product of custodial interrogation and, therefore, fell outside the scope of Miranda. People v. Daoud, No. 215615 (Mich. Ct. App. Jan. 11, 1999). Petitioner did not appeal the court of appeals' determination to the Michigan Supreme Court. In addition, Petitioner does not challenge the Michigan Court of Appeals' holding in his habeas petition.

N.W.2d 73 (1999).

The relevant question in determining if the admission of the second confession was harmless is whether it had a substantial and injurious effect on the court's determination of the each element of first-degree murder. The first confession included ample evidence that Petitioner intentionally caused the murder. With respect to the element of premeditation, the second confession provided extensive evidence regarding premeditation. However, the first confession also provided ample support for a finding of premeditation. First, and most importantly, Petitioner admitted to sawing off a lug wrench prior to beating his mother. The use of a weapon fashioned prior to the murder is strong evidence in support of a finding of premeditation. Second, Petitioner's conduct after the murder of concealing the body also is relevant to a finding of premeditation as were the nature and extent of the victim's injuries. Therefore, because the first confession supported a finding of guilt of first-degree murder, the Court concludes that admission of the second confession did not have a substantial and injurious influence in determining the jury's verdict.

### B. Denial of Petitioner's Motions for Evidentiary Hearing and Independent Psychological Evaluation

Petitioner next argues that the state court's denial of his request for an evidentiary hearing pursuant to People v. Ginther, 390 Mich. 436 (1973), and an independent psychological evaluation deprived him of his right to present a defense.

Ginther does not confer an absolute right to an evidentiary hearing in all cases where a defendant alleges ineffective assistance of counsel, and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Therefore, this portion of Petitioner's second claim is not cognizable on habeas corpus review. Moreover, although

Petitioner was denied a full-blown <u>Ginther</u> hearing, his trial attorney did testify regarding his representation of Petitioner.

Respondent argues that Petitioner's claim regarding the independent psychological evaluation is procedurally defaulted because the Michigan Court of Appeals relied upon a clearly established state procedural rule in denying this claim.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, <u>Coleman</u>, 501 U.S. at 752, if she fails to present an issue to a state appellate court at her only opportunity to do so, <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994), or if she fails to comply with a state procedural rule that required her to have done something at trial to preserve her claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. <u>United States v. Frady</u>, 456 U.S. 152, 167-69 (1982); <u>Simpson v. Sparkman</u>, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." <u>Rust</u>, 17 F.3d at 162; *see* <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986); <u>Dretke v. Haley</u>, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with

15

that state procedural rule. <u>Williams v. Coyle</u>, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002); *see also* <u>Warner v. United States</u>, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. <u>Coleman</u>, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." <u>Simpson</u>, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. <u>Rust</u>, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that it would not address the issue because it was not properly presented where it was presented for the first time in Petitioner's reply brief. The rule that an issue presented for the first time in a reply brief is not properly presented was clearly established and regularly followed at the time Petitioner filed his appeal to the Michigan Court of Appeals. <u>See</u> Mich. Ct.

R. 7.212(G); Blazer Foods, Inc v. Restaurant Properties, Inc, 259 Mich. App 241, 252; 673 N.W.2d 805 (2003) (raising a new issue in a reply brief does not properly present that issue for appeal). This Court, therefore, may not review Petitioner's claim unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider this claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner does not argue any cause to excuse his procedural default. Therefore, his claim is barred from review unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id. This evidence "must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." Id. at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is barred from consideration by procedural default.

### C. Alleged Ineffective Assistance of Counsel

Finally, Petitioner argues that his trial attorney was ineffective in failing to raise an insanity defense.

To establish that he received ineffective assistance of counsel, a petitioner must show,

first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." <u>Id.</u> at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" <u>Tinsley v. Million</u>, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).

On remand from the Michigan Court of Appeals, the trial court conducted a truncated hearing regarding Petitioner's ineffective assistance of counsel claim. During the hearing, Petitioner's trial attorney, William Cataldo, testified. Cataldo testified that he consulted with Dr. Grisso, an independent expert appointed by the court to address the <u>Miranda</u> issue, regarding the viability of an insanity defense. Cataldo testified that he considered Dr. Grisso to be the nation's foremost expert on the insanity defense. (Tr., 5/12/04, 17) He asked Dr. Grisso whether he could, in 1997, go back to the time of the murder (1985), and determine that Petitioner was insane. (<u>Id.</u>) Dr. Grisso told Cataldo that he could not. (<u>Id.</u> at 18) Dr. Grisso felt that all of the evidence regarding Petitioner's mental illness post-dated the date of the crime. (<u>Id.</u>) Cataldo also consulted with Dr. Mogy, who advised Cataldo that he could not go back to 1985 and make a finding of insanity. (<u>Id.</u>) The defense's expert, Dr. Clark, also told Cataldo that he would not be able to make a finding of insanity in 1985. (<u>Id.</u> at 18-19). He also stated that the State of

Michigan's Forensic Center could not make a determination that Petitioner was insane at the time of the murder. Cataldo testified that, based upon these expert opinions, he concluded that an insanity defense was not a viable option.

The Michigan Court of Appeals held that Cataldo's decision not to present an insanity defense did not render his assistance ineffective. In reaching this decision, the state court considered that neither Dr. Balay, Dr. Clark, nor Dr. Mogy concluded that Petitioner might have qualified as legally insane in 1985. Nevertheless, defense counsel also sought a criminal responsibility examination by the Forensic Center to attempt to determine the statues of Petitioner's sanity in 1985. The Forensic Center also determined that Petitioner did not suffer from a mental illness which impeded his ability to appreciate the wrongfulness of his conduct or to conform his conduct to the law. The state court concluded:

> In summary, neither the 2002 criminal responsibility examination nor any testimony by Balay, Clark, Mogy, or Grisso contains any suggestion that defendant had a serious mental disturbance in 1985. The apparent efforts by defense counsel to obtain an opinion concerning defendant's sanity at the time of the killing belie defendant's suggestion on appeal that he failed to properly investigate an insanity defense. Given the absence of support for such a defense from the four experts solicited, defendant has not overcome the strong presumption that defense counsel engaged in sound trial strategy by focusing elsewhere during the trial, for example attacking the credibility of defendant's statement to the police and the abundant evidence of premeditation on the basis of the evidence that defendant experienced delusions, and by arguing that no physical evidence tied defendant to the killing. Furthermore, defendant offers nothing more than bare speculation in support of his suggestion that through additional efforts defense counsel may have been able to locate someone who might have opined that defendant was insane in 1985. Accordingly, we conclude that defense counsel was not ineffective because no indication exists that defendant was deprived of a substantial defense.

Daoud, slip op. at 5.

In support of his claim that the state court's foregoing opinion is unreasonable, Petitioner

cites the evaluation of Dr. Shiener.  With regard to Petitioner's state of mind at the time of the

murder, Dr. Shiener concluded as follows:

> [H]is description of the behavior involved, in conjunction with the chronic nature
> of his psychiatric illness and the ongoing psychotic symptomatology that he
> experienced, are more consistent with the patients' suffering from a serious
> disorder of thought – paranoid schizophrenia, that impaired his ability to conform
> his actions to that expected by law or expected by the community.
>
> Mr. Daoud's actions were without motive, were based on conclusions that were
> the product of faulty thinking, and were so intertwined with religious delusions as
> evidenced by his stating that he "did what I had to do to destroy the strongholds
> of religion upon my mom and to save the honor of my sisters.  I didn't murder my
> mom . . . I saved her."  These are statements made by the patient absent the
> intervention of medication and present clear examples of the thought disorder
> from which he suffered.

Id. at p. 14.

When reviewing an ineffective assistance of counsel claim, this Court "must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of

the time of counsel's conduct."  Wilson v. Parker, 515 F.3d 682, 699 (6th Cir. 2008) (internal

quotation omitted). "[C]ounsel has a duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness

case, a particular decision not to investigate must be directly assessed for reasonableness in all

the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland,

466 U.S. at 691.  Although Dr. Shiener's testimony provides support for Petitioner's claim that

he may have suffered from a mental illness at the time of the murder, it does not negate the

opinions of the several other expert witnesses who reached a contrary conclusion.  Moreover,

defense counsel's conclusion not to pursue an insanity defense was a reasonable decision based

upon a considered evaluation of the expert opinions available at the time.  The Court, mindful

that it must evaluate counsel's performance without the "distorting effects of hindsight," id. at 689, and that the decision not to seek another expert witness was a reasonable one, concludes that the state court's opinion that Petitioner's attorney was not ineffective was not contrary to or an unreasonable application of Supreme Court precedent.

## V.  Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  April 23, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 23, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager